UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MATHIS & SONS, INC., et al.,                                    Plaintiffs,

v.                                           Civil Action No. 3:14-cv-535-DJH-DW

THE COMMONWEALTH OF KENTUCKY
TRANSPORTATION CABINET, et al.,                              Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Mathis & Sons, Inc. is a construction company that sought additional work certifications under a program run by the Kentucky Transportation Cabinet (KYTC) to promote minority-owned businesses.  (Docket No. 34-1, PageID # 115)  Mathis & Sons is owned by Plaintiff Maureen Mathis, an African-American woman. (D.N. 1, PageID # 2)  According to Mathis & Sons, its application was treated less favorably than those of white-owned businesses. (D.N. 1; 37)  The plaintiffs filed suit against KYTC and several Cabinet employees, alleging racial discrimination in violation of Title VI and 42 U.S.C. § 1983.  (D.N. 1)  Additionally, the plaintiffs assert state-law claims of negligence and bad faith.  (*Id.*)  The defendants have filed a motion for summary judgment, arguing that there is not sufficient evidence of racial discrimination.  (D.N. 34)  Because the plaintiffs have raised a genuine dispute of material fact as to whether they were discriminated against because of their race, the defendants' motion for summary judgment will be denied in part and granted in part.

## I.      BACKGROUND

Because this is a motion for summary judgment, the Court views the evidence in the light most favorable to the plaintiffs.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

1

The KYTC "participates in the Federal Department of Transportation's Disadvantaged Business Enterprise (DBE) Program, which promotes non-discrimination and participation of minority owned businesses on federally funded construction projects." (D.N. 34-1, PageID # 115 (citing 49 C.F.R. § 26.21))

Mathis & Sons, Inc. is a "construction contracting firm" headquartered in Louisville, Kentucky. (*Id*.) Plaintiff Maureen Mathis is the President of Mathis & Sons. (*Id*.) Mathis is an African-American woman. (D.N. 1, PageID # 2) Mathis's sons, Anthony and Daryl Mathis, are also African American and work with their mother at the company. (D.N. 37, PageID # 133) In 2003, Mathis & Sons was certified as a DBE by KYTC. (D.N. 34-1, PageID # 115)

In 2013, Mathis & Sons sought subcontracting work on the construction of two bridges as part of the Ohio River Bridges project. (D.N. 37, PageID # 133–34) The project called for DBEs to perform approximately 9% of the work. (*Id*., PageID # 133) After meeting with the lead contractor, Mathis & Sons submitted a proposal to perform construction work for the project. (*Id*., PageID # 134) The parties met again and agreed that Mathis & Sons would submit a second proposal for a larger scope of work that included consulting services. (*Id*.)

To perform such services, Mathis & Sons needed "supplemental [North American Industry Classification System (NAICS)] code designations on its DBE certification reflecting Mathis & Sons' ability to perform the consulting services work outlined in the proposal." (*Id*., PageID # 135) In April 2013, Mathis & Sons submitted its request for supplemental NAICS codes to the KYTC's Office of Civil Rights and Small Business Development. (*Id*., PageID # 135, 157) In its request for NAICS approval, Mathis & Sons informed KYTC that the lead contractor "would like to enter into an agreement with Mathis & Sons as a DBE to provide consulting services for the new construction of the Bridge project." (*Id*., PageID # 135) The

lead contractor confirmed that the "only thing standing in the way of [the lead contractor] entering into an agreement with Mathis" was approval of the NAICS codes. (*Id.*)

When Mathis & Sons applied for its NAICS codes, Reed Hampton "was assigned as lead investigator on the matter." (*Id.*, PageID # 157) Hampton had worked as an investigator for KYTC's Office of Civil Rights and Small Business Development for approximately thirteen years. (*Id.*, PageID # 156) Hampton was responsible for determining whether an applicant should be certified as a DBE and whether "certifications for existing DBEs qualified for renewal." (*Id.*, PageID # 156–57) Hampton also evaluated whether existing DBEs "were qualified to receive supplemental certification codes," such as NAICS codes. (*Id.*, PageID # 157)

During the investigation, Hampton was assisted by Defendant Shella Eagle. (*Id.*, PageID # 138) After completing the investigation, Hampton and Eagle agreed that Mathis & Sons was qualified to perform the consulting work for which it was seeking NAICS code certification. (*Id.*, PageID # 138, 158) Additionally, because Mathis & Sons' DBE certification was up for renewal in several months, Hampton included a recommendation for renewal in his report. (*Id.*, PageID # 158) Typically, the lead investigator then submits his recommendation to the Certification Committee. (*Id.*, PageID # 137–38) The committee usually accepts the lead investigator's recommendation. (*Id.*)

After internally communicating his recommendation to his staff, Hampton took medical leave and was out for several weeks. (*Id.*) Hampton believed that his recommendation would be forwarded to the committee in his absence. (*Id.*) However, Hampton and the plaintiffs claim that "standard protocol and procedure" were not followed. (*Id.*, PageID # 139) Instead of forwarding Hampton's recommendation to the committee, Defendant Tyra Redus, then executive

director of KYTC's Office of Civil Rights and Small Business Development, allegedly directed Eagle to draft a different recommendation that called for the committee to deny Mathis & Sons' request for NAICS code certification and de-certify it from the DBE program. (*Id*.; D.N. 34-1, PageID # 114)

The defendants claim that during Hampton's investigation, "KYTC investigators expressed concerns" to Redus and Defendant Melvin Bynes, a branch manager at KYTC, that Maureen Mathis did not control Mathis & Sons. (D.N. 34-1. PageID # 116) These concerns stemmed from an on-site interview, in which Mathis's sons answered the majority of the investigators' questions. (*Id*.)

The new recommendation for de-certification was submitted to the committee but still listed Reed Hampton as lead investigator, making it appear as though it was his recommendation. (D.N. 37, PageID # 139–40) Hampton states that he learned that his recommendation had not been forwarded to the committee while he was out on medical leave. (*Id*., PageID # 158) Eagle claims that had she known that Hampton recommended approving Mathis & Sons' request for supplemental NAICS codes, she would have drafted a recommendation consistent with Hampton's opinion. (*Id*.)

In July 2013, the committee met to consider Mathis & Sons' request. (D.N. 34-1, PageID # 116) Maureen Mathis testified and provided evidence of her control of the company. (*Id*., PageID # 117) Hampton also appeared before the committee and argued that Mathis & Sons' request for NAICS codes should be approved and the company should not be de-certified from the DBE program. (D.N. 37, PageID # 158–59) The committee requested additional information regarding control of the company and deferred a decision until its August meeting.

(D.N. 34-1, PageID # 117)  At the August meeting, the committee approved Mathis & Sons' request for supplemental NAICS code certification.  (*Id*.)

After receiving the certification, Mathis & Sons contacted the lead contractor of the Bridge Project to advise him of the update.  (D.N. 1, PageID # 8)  However, the contractor informed Mathis & Sons that because of the delay in obtaining the certification, the position had already been filled.  (D.N. 37, PageID # 142)

In August 2013, Hampton filed internal complaints with KYTC, alleging, in relevant part, that the DBE program treated white applicants more favorably than African-American applicants.  (*Id*., PageID # 159, 165–66)  In his internal complaint, Hampton provided several specific examples of the alleged preferential treatment.  (*Id*., PageID # 165–66)

Hampton's complaint was investigated by the Federal Highway Administration's Kentucky Division Office.  (D.N. 40-2, PageID # 181)  A civil rights specialist "conducted phone and in-person interviews with seven individuals [and] reviewed the certification files of each applicant firm identified in the complaint as well as similarly situated firms with owners who were not African-American males."  (*Id*.)  Additionally, the specialist "analyzed a list of all DBE firms that applied for DBE certification for the past 2 years" and "compared KYTC's actions for 'African-American' and 'white' program applicants as to whether they were (1) certified; (2) denied; or (3) the application was withdrawn or terminated."  (*Id*., PageID # 182)

The investigator concluded that there was "no evidence that the KYTC implemented its DBE Program such that it discriminated against older, African American-owned applicants through disparate treatment" or "through disparate impact."  (*Id*.)  However, "there was a disparity between the rates that African American-owned firms were terminated or withdrawn compared to white-owned firms," but "the Investigator could not draw a conclusion about the

disparity." (*Id*.)  The FHWA asked its Civil Rights Division to "work with KYTC to investigate the potential cause for this disparity." (*Id*., PageID # 183)

Mathis & Sons, Inc. and Maureen Mathis filed suit against KYTC, Shella Eagle, Tyra Redus, and Melvin Bynes, alleging racial discrimination in violation of Title VI and 42 U.S.C. § 1983, as well as state-law claims of negligence and bad faith.  (D.N. 1)  The defendants seek summary judgment.  (D.N. 34)  They argue that the plaintiffs do not have a "legitimate claim of entitlement" to assert that the company would have been awarded the project had the state not allegedly discriminated against them.  (D.N. 34-1, PageID # 118–20)  Next, the defendants argue that the plaintiffs' Title VI claim must be dismissed because the plaintiffs have not presented sufficient evidence of intentional discrimination.  (*Id*., PageID # 120–24)  The defendants also contend that the plaintiffs' § 1983 claim must fail because it is preempted by Title VI.  (*Id*., PageID # 122–24)  Alternatively, the individual defendants assert that they are entitled to qualified immunity, while KYTC is entitled to sovereign immunity on both the federal and state-law claims.  (*Id*.)  Finally, the defendants argue that the tort of bad faith has never been recognized in this context and thus must be dismissed.  (*Id*., PageID # 124)  The plaintiffs dispute each of these arguments.  (D.N. 37)

## II.   DISCUSSION

To grant a motion for summary judgment, the Court must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the initial burden of identifying the basis for its motion and those portions of the record that "it believes demonstrate the absence

of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies this burden, the non-moving party must point to specific facts demonstrating a genuine issue of fact.  *Anderson*, 477 U.S. at 247–48 (1986).

In considering a motion for summary judgment, the Court must review the evidence in the light most favorable to the non-moving party, *Matsushita*, 475 U.S. at 586; however, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.  The non-moving party must present specific facts demonstrating that a genuine issue of fact exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute."  Fed. R. Civ. P. 56(c)(1).

## A. Entitlement

The defendants first argue that the plaintiffs' claims of racial discrimination must be dismissed because they have failed to demonstrate that they were entitled to a faster review of their NAICS application.  (D.N. 34-1, PageID # 118-20)  Further, the defendants contend that the plaintiffs have not shown that but for the alleged delay of their NAICS application, they would have been awarded the contract by the lead contractor of the Bridge Project.  (*Id.*)  To support their argument, the defendants assert, "a plaintiff 'must demonstrate that it had "a legitimate claim of entitlement," not "a mere unilateral expectation" in the interest said to be interfered with.'"  (*Id.*, PageID # 120 (citing *TriHealth Inc. v. Bd. of Comm'rs, Hamilton Cty. Ohio*, 430 F.3d 783, 792 (6th Cir. 2005); *Bailey v. Floyd Cty. Bd. of Educ.*, 106 F 3.d 135 (6th Cir. 1997))).

However, the defendants' argument and supporting case law apply in the context of procedural due process claims.  In this case, the plaintiffs have not asserted a procedural due process claim.  Instead, the plaintiffs have brought claims of racial discrimination pursuant to

7

Title VI, 42 U.S.C. § 1983, and the Equal Protection Clause.  (D.N. 1)  Such claims do not require a plaintiff to show an entitlement.  *See TriHealth, Inc.*, 430 F.3d at 788–94 (considering the plaintiff's claim of entitlement when analyzing its Due Process claim, but not its Equal Protection claim); *Nat'l Ass'n for Advancement of Colored People v. Wilmington Med. Ctr., Inc.*, 453 F. Supp. 330, 340 (D. Del. 1978).

Even if the plaintiffs were required to show an entitlement, they have done so.  The plaintiffs provided evidence that the lead contractor was prepared to enter into an agreement with Mathis & Sons and the only reason such an agreement was delayed was because of the DBE certification process.  (D.N. 37, PageID # 135)  Therefore, the defendants' argument fails.

## B.  Title VI

The plaintiffs claim that the defendants discriminated against them because of their race in violation of Title VI of the Civil Rights Act.  (D.N. 1-1, PageID # 7–8 (citing 42 U.S.C. § 4000d))  Title VI states:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d.  In enacting Title VI, Congress intended "to halt federal funding of entities that violate a prohibition of racial discrimination similar to that of the Constitution." *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 284 (1978).  Notably, "Title VI targets intentional discrimination only." *Foster v. Michigan*, 573 F. App'x 377, 388 (6th Cir. 2014) (citing *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001)).

### 1.  Title VI Claims Against Individual Defendants

The defendants argue that the plaintiffs' Title VI claims against Shella Jarvis Eagle, Tyra Redus, and Melvin Bynes must be dismissed because Eagle, Redus, and Bynes are not subject to

8

Title VI.  (D.N. 40, PageID # 170–71)  The defendants are correct that "Title VI claims cannot be asserted against an individual defendant."  *Watkins v. CCA-Corp. of Am.*, No. 3:12-CV-984, 2012 WL 5904751, at *2 (M.D. Tenn. Nov. 26, 2012); *see also Vinova v. Henry Cty. Bd. of Educ.*, No. CV 15-37-GFVT, 2015 WL 7681246, at *2 (E.D. Ky. Nov. 24, 2015) ("Although private individuals may sue to enforce Title VI, individuals generally cannot be held liable for violations of Title VI because it applies only to entities receiving federal funding.").  Therefore, to the extent that the plaintiffs have made any Title VI claims against Eagle, Redus, and Bynes as individuals, the Court will grant the defendants' motion for summary judgment on these claims.

### 2.  Vicarious Liability

Next, KYTC asserts that the plaintiffs' Title VI claims against it must be dismissed because "there is no vicarious[] liability under Title VI."  (D.N. 40, PageID # 174 (quoting *Foster v. State of Michigan*, 573 F. App'x 377 (6th Cir. 2014)))  "An institution is only liable if it intentionally harassed or discriminated on the basis of race or nationality."  *Rodgers v. Univ. of Mo. Bd. of Curators*, 56 F. Supp. 3d 1037, 1048 (E.D. Mo. 2014), *aff'd as modified sub nom. Rodgers v. Curators of Univ. of Mo. Sys.*, 634 F. App'x 598 (8th Cir. 2015) (citing *Hurd v. Del. State Univ.*, No. C.A.07-117-MPT, 2008 WL 4369983, at *6 (D. Del. Sept. 25, 2008)); *see also Foster*, 573 F. App'x at 388 (citing *Alexander*, 532 U.S. at 280).

Here, the plaintiffs allege just that.  (*See* D.N.1, PageID # 8–9)  They claim that KYTC "intentionally discriminated against Plaintiffs Mathis and [Mathis & Sons] . . . on the basis of Plaintiff's race."  (*Id.*)  This claim is supported by FHWA's finding that "there was a disparity between the rates that African American-owned firms were terminated or withdrawn compared to white-owned firms" and its request that KYTC investigate a possible cause.  (D.N. 40-2, PageID # 182)  The plaintiffs also provide Reed Hampton's internal complaint, which contains

specific allegations of situations where KYTC treated an African American-owned business less favorably than a white-owned business.  (D.N. 37, PageID # 159, 165–66)  The plaintiffs' claim alleges that KYTC, as an institution, intentionally discriminated against African American-owned businesses; it does not rely on a theory of vicarious liability or respondeat superior.  (*See id.*)  Therefore, the defendants' argument regarding vicarious liability fails.

### 3. *McDonnell Douglas* Analysis

While the plaintiffs' Title VI claim against KYTC survives the defendants' vicarious liability argument, the Court must next determine whether the plaintiffs' claim of intentional discrimination can survive the defendants' motion for summary judgment.  The Sixth Circuit has "assume[d] without deciding that [the *McDonnell Douglas*] burden-shifting framework governs . . . Title VI claims."  *Johnson v. City of Clarksville*, 186 F. App'x 592, 595 (6th Cir. 2006) (citing *Paasewe v. Ohio Arts Council*, 74 F. App'x 505, 508 (6th Cir. 2003); *Gazarov ex rel. Gazarov v. Diocese of Erie*, 80 F. App'x 202, 204–05 (3d Cir. 2003); *Fuller v. Rayburn*, 161 F.3d 516, 518 (8th Cir. 1998)).  "To establish a prima facie case under *McDonnell Douglas*, Plaintiffs must show that similarly-situated members of the nonprotected class received more favorable treatment than they received."  *Id.* (citing *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004); *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 731 (6th Cir. 2004)).

While the FHWA investigation concluded that that there was "no evidence that the KYTC implemented its DBE Program such that it discriminated against older, African-American owned applicants through disparate treatment" or "through disparate impact," it also found that "there was a disparity between the rates that African American-owned firms were terminated or withdrawn compared to white-owned firms."  (*Id.*)  Here, the plaintiffs allege that approval of their NAICS application took longer because Redus attempted to terminate their DBE eligibility.

10

(D.N. 37, PageID # 137–38; D.N. 34-1, PageID # 114)  Because FHWA's investigation relates to the Court's *McDonnell Douglas* analysis, the Court must determine whether FHWA's findings are entitled to preclusive effect.

### i.      Preclusive Effect of FHWA's Investigation

The Supreme Court has held that a federal agency's factfinding has a preclusive effect "[w]hen an administrative agency is acting in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate."  *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966); *see also Univ. of Tenn. v. Elliott*, 478 U.S. 788, 798 (1986); *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 485 (1982).  Therefore, if FHWA was acting in a judicial capacity when it investigated Hampton's complaint against KYTC, FHWA's findings are entitled to preclusive effect.  *See Utah Constr. & Mining Co.*, 384 U.S. at 422.

While FHWA interviewed a number of people, reviewed the certification files, and analyzed the relevant data, the parties did not have an opportunity to introduce evidence, present their version of the facts outside of the initial complaint, conduct a hearing, or appeal FHWA's findings.  (D.N. 40-2, PageID # 181–84; D.N. 43, PageID # 193–94)  Because neither side was given these opportunities, the Court concludes that FHWA was not acting in a judicial capacity. *See Columbia Gas*, 2014 WL 2711943, at *3.  Therefore, the agency's conclusions are not entitled to preclusive effect but may be considered as evidence of racial discrimination.  *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 112–14 (1991).

### ii.      Prima Facie Case of Racial Discrimination

Because FHWA's findings do not have to be given preclusive effect, the Court returns to the *McDonnell Douglas* analysis to determine whether the plaintiffs have demonstrated a prima

facie case of racial discrimination.  For support, the plaintiffs provide Hampton's internal complaint, which alleged that Mathis & Sons, a construction company owned by a black woman, was treated differently than NWK Construction, Judy Harp Construction, Bar-Tie Reinforcing, and John Bays Incorporated, which are construction companies owned by white women.  (D.N. 37, PageID # 165–66)  Hampton specifically claimed that the roles of Alice Bays and her sons in John Bays Incorporated were similar to those of Mathis and her sons.  (*Id.*)  Nevertheless, John Bays was recommended for continued DBE certification during the same time that Mathis & Sons' DBE certification was nearly terminated.  (*Id.*)

Additionally, while Mathis & Sons' NAICS application was eventually approved in August of 2013, according to Hampton, the "certification approving the additional NAICS codes should have been granted in May of 2013." (*Id.*, PageID # 159)  The delay in Mathis & Sons' NAICS approval was largely due to the recommendation that the company lose its DBE certification because Mathis did not exercise sufficient control over the company.  (D.N. 34-1, PageID # 116–17)  The FHWA found that "there was a disparity between the rates that African American-owned firms were terminated or withdrawn compared to white-owned firms" but did not draw a conclusion about the cause of the disparity.  (D.N. 40-2, PageID # 182)  Taken together, the record includes both anecdotal and statistical evidence of KYTC's bias against African American-owned businesses in the context of DBE certification.  Further, the plaintiffs have provided evidence that the alleged delay as a result of this bias caused them to lose business.

In response, the defendants argue that the plaintiffs have not shown that the companies used for comparison are "similarly situated" to Mathis & Sons for purposes of showing racial discrimination.  (D.N. 40, PageID # 176–77)  The Court disagrees.  Mathis & Sons is a

construction company that is owned by a black woman and participates in Kentucky's DBE program, and for comparison the plaintiffs offer the names of construction companies that are owned by white women and participate in the same DBE program.  (D.N. 37, PageID # 165–66)  Additionally, the plaintiffs specifically point to the more favorable treatment of John Bays Incorporated, a company owned by a white woman that the plaintiffs allege was similarly investigated two weeks after Mathis & Sons regarding its ownership, yet despite similar circumstances, John Bays's certification was not questioned.  (*Id.*)  It is hard to imagine a more apt comparison for the plaintiffs' allegations in this case than similar businesses owned by white women.

Because both a KYTC employee and an independent FHWA investigation suggest that the Cabinet treated companies owned by African Americans, including Mathis & Sons, less favorably than companies owned by whites, the Court finds that the plaintiffs have presented sufficient evidence to establish a prima facie case of racial discrimination.  (D.N. 37, PageID # 165–66; D.N. 40-2, PageID # 182)  *See Johnson*, 186 F. App'x at 595.  Therefore, the burden shifts to the defendants to demonstrate that they had a legitimate, nondiscriminatory reason for their treatment of Mathis & Sons.  *See Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 184 (6th Cir. 2004).

The defendants have provided a nondiscriminatory explanation for their treatment of Mathis & Sons.  They assert that the delay was due to investigators' concerns regarding whether Ms. Mathis exerted sufficient control over Mathis & Sons.  (D.N. 34-1, PageID # 116)  According to the defendants, Redus grew concerned after investigators conducted an on-site interview in which Mathis's sons answered most of Eagle's questions about the company.  (*Id.*)  The defendants claim that this was a legitimate concern, and the plaintiffs were given an

opportunity to respond.  (*Id.*)  Additionally, the defendants emphasize that because the KYTC DBE Committee ultimately rejected Eagle's recommendation to terminate Mathis & Sons' DBE Certification and approve its NAICS request, the plaintiffs suffered "no adverse action."  (*Id.*, PageID # 117)

Because the defendants have provided a nondiscriminatiory explanation, "the burden again shifts to the plaintiff to establish that the defendant's reason is mere pretext."  *Paasewe*, 74 F. App'x at 508.  "More specifically, a plaintiff must produce enough evidence that a jury could reasonably reject the employer's explanation for its decisions."  *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 883 (6th Cir. 1996) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994)).  A plaintiff must demonstrate such pretext "through direct, statistical or circumstantial evidence."  *Florence v. U.S. Vanadium Corp.*, 162 F.3d 1147 (2d Cir. 1998).

Hampton's affidavit and FHWA's investigation could lead a jury to believe that KYTC's stated reason for attempting to terminate Mathis & Son's DBE certification was pretextual.  *See Ashanta v. Louisville Gas & Elec. Co.*, Civ. Action No. 01-656-JBC, 2009 WL 3211031, at *2 (W.D. Ky. Sept. 30, 2009) (finding that the same evidence demonstrated a prima facie claim of racial discrimination and "could support a decision by a reasonable fact-finder that the proffered reasons are pretextual.").  As mentioned earlier, Hampton's affidavit provides specific examples of businesses that it alleges were treated more favorably in similar situations.  (D.N. 37, PageID # 156–59)  Additionally, FHWA's independent investigation offered statistical evidence of less favorable outcomes regarding termination of DBE certification for minority-owned businesses, which is what allegedly caused the delay in this case.  (D.N. 40-2)  This evidence is sufficient for a jury to reasonably reject KYTC's explanation for its actions.  *See Kocsis*, 97 F.3d at 883.

14

As a final note, even if Mathis & Sons was controlled by Daryl and Anthony Mathis, rather than Maureen Mathis, it is not clear to the Court why that would threaten DBE certification. The DBE program seeks to promote minority-owned businesses. (D.N. 34-1, PageID # 115 (citing 49 C.F.R. § 26.21)) "A business owned by a female or an African American may qualify as a DBE." (D.N. 1, PageID # 3) Because Daryl and Anthony Mathis are African American, it seems that even if they controlled Mathis & Sons, the company would still qualify as a minority-owned business and thus be eligible for the DBE program. (D.N. 37, PageID # 133)

Because both sides have met their burdens under the *McDonnell Douglas* burden-shifting framework, there is a genuine dispute of material fact and summary judgment is inappropriate. Fed. R. Civ. P. 56(a); *Anderson*, 477 U.S. at 248. The plaintiffs have presented evidence that the defendants treated Mathis & Sons less favorably than similarly situated white-owned businesses. The defendants have provided a nondiscriminatory explanation for their treatment of Mathis & Sons. The plaintiffs have responded by providing evidence that the defendants' stated reason for their actions is pretextual. The Court will not weigh the evidence at this stage. *Anderson*, 477 U.S. at 249. Therefore, the defendants' motion for summary judgment will be denied with respect to the plaintiffs' Title VI claim. *See id*.

### C. 42 U.S.C. § 1983 Claims

The plaintiffs have also claimed race discrimination pursuant to 42 U.S.C. § 1983. Section 1983 "does not provide an independent cause of action." *Muhammad v. Dempsey*, 531 F. App'x 216, 219 (3d Cir. 2013) (citing *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 407 (3d Cir. 2000)). Rather, § 1983 is a vehicle for alleging federal constitutional violations. *Flint ex rel. Flint v. Kentucky Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001)

15

(citing *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985)) ("Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere."); *Estes v. Morris*, 142 F.3d 433, at *2 (6th Cir. 1998) (citing *Langford v. Lane*, 921 F.2d 677, 678 (6th Cir. 1991)).  The plaintiffs' complaint does not state what federal statute or constitutional provision their § 1983 is made pursuant to; however, the Sixth Circuit has interpreted a similar claim of racial discrimination as being made pursuant to the Equal Protection Clause.  *Lilly v. City of Clarksville, Tenn.*, 510 F. App'x 374, 376 (6th Cir. 2013).  Therefore, the Court will assume that the plaintiffs' § 1983 claim is made pursuant to the Equal Protection Clause.  *Id*.

    To establish their § 1983 claim of racial discrimination, the plaintiffs must show that "(1) [the] defendants acted under state law, and (2) [the plaintiffs] suffered a deprivation of a constitutional right as a result of that action."  *Id*. (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

### 1. Preemption

    The defendants first argue that the plaintiffs' § 1983 claim of racial discrimination is preempted by their Title VI claim of racial discrimination.  (D.N. 34-1, PageID # 122–23)  There are several issues with the defendants' argument.  First, the defendants assumed that the plaintiffs' § 1983 was made pursuant to Title VI rather than the Equal Protection Clause.  (*Id*.)  As explained above, the Court assumed the opposite and under this assumption, the plaintiffs' § 1983 claim is not preempted by their Title VI claim.  While the plaintiffs' Title VI claim and § 1983 claim are based on the same set of facts, the two claims are distinct.  As Justice Marshall explained, "Title VI applies to all recipients of federal funds; § 1983 governs a different class of persons: those who act 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.'"  *Guardians Ass'n v. Civil Serv. Comm'n of City of N.Y.*, 463 U.S. 582,

638 (1983) (Marshall, J., dissenting).  Therefore, a party can be bound by both § 1983 and Title VI.  *Id.* (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).

Nevertheless, even assuming the plaintiffs' § 1983 claim is subject to Title VI, the Supreme Court has held that "a statutory violation may be enforced through § 1983" if "Congress intended to confer individual rights upon a class of beneficiaries."  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283–85 (2002).  In *Sandoval*, the Supreme Court concluded that Congress intended for private citizens to be able to sue to enforce § 601, but not § 602, of Title VI.  532 U.S. at 279; *see also Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 906 (6th Cir. 2004).  Section 601 of Title VI relates to intentional-discrimination claims, while § 602 governs disparate-impact regulations.  *Id.* at 285–86.

While the plaintiffs' complaint explicitly alleges intentional discrimination, it makes no mention of a disparate-impact regulation.  (D.N. 1)  Therefore, to the extent that the plaintiffs' § 1983 claim relates to Title VI, it is related to § 601 of Title VI.  Because § 601 allows for enforcement by private individuals, the plaintiffs' claim of racial discrimination may be enforced through § 1983 and thus their § 1983 claim is not preempted by their Title VI claim.

For these reasons, the plaintiffs' § 1983 claim of racial discrimination is not preempted by their Title VI claim.

### 2.  Sovereign Immunity

The defendants next argue that they are entitled to sovereign immunity.  The Court agrees.

The plaintiffs' claims against Defendants Shella Eagle, Tyra Redus, and Melvin Bynes in their official capacities are considered to be claims against the Kentucky Transportation Cabinet, which are in effect claims against the state.  *Kentucky v. Graham,* 473 U.S. 159, 166 (1985);

*Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013).  The Eleventh Amendment prohibits §

1983 claims against a state in federal court, regardless of the relief sought, unless the state has

waived its immunity or Congress has overridden it.  *See P.R. Aqueduct & Sewer Auth. v. Metcalf*

*& Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S.

89, 119-20 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *Ferritto v. Ohio Dep't of*

*Highway Safety*, No. 90-3745, 1991 WL 37824, at *2 (6th Cir. Mar. 19, 1991).    The

Commonwealth of Kentucky has not waived its immunity to § 1983 suits, *see Adams v. Morris*,

90 F. App'x 856, 857 (6th Cir. 2004), and in enacting § 1983, Congress did not intend to

override the traditional sovereign immunity of the states.  *Whittington v. Milby*, 928 F.2d 188,

193-94 (6th Cir. 1991) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979)).  Thus, Defendants

Shella Eagle, Tyra Redus, and Melvin Bynes are entitled to sovereign immunity on the claims

made against them in their official capacities.    Additionally, KYTC is entitled to sovereign

immunity.

### 3.   Qualified Immunity

The defendants also argue that Eagle, Redus, and Bynes are entitled to qualified

immunity for the plaintiffs' claims against them in their individual capacities.    Under the

doctrine of qualified immunity, "government officials performing discretionary functions

generally are shielded from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have

known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity balances two

separate interests—the need to hold public officials accountable when they abuse authority and

the need to protect officials from harassment that may prevent them from discharging their

duties.  *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

18

The Sixth Circuit uses a two-prong test to determine whether public officials may be held individually liable for their official acts.  *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2006).  First, a plaintiff must demonstrate that a public official violated a constitutional right.  *Id.*  Second, a plaintiff must show that the right in question was clearly established at the time of the violation.  *Id.*  The applicability of qualified immunity is a question of law to be determined by the Court.  *Heflin v. Stewart Cty., Tenn.*, 958 F.2d 709, 717 (6th Cir. 1992).

To prove that an "official['s] actions were improperly motivated," a plaintiff must provide "proof that would be strong enough to allow a jury to return a verdict for her under appropriate instructions."  *Crutcher v. Commonwealth of Ky.*, 883 F.2d 502, 504 (6th Cir. 1989).  Plaintiffs may present either direct evidence or circumstantial proof.  *Id*; *see also Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 152 (6th Cir. 1995).

In this case, the plaintiffs argue that they have the right to be free from discrimination on the basis of race.  (D.N. 1, PageID # 9–10)  As noted earlier, the Court will "construe [the plaintiffs'] claim as one for racial discrimination in violation of the equal protection clause, which requires that [the plaintiffs] prove that a state actor purposefully discriminated against [the plaintiffs] on the basis of [the plaintiffs'] race."  *Lilly*, 510 F. App'x at 376 (citing *Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 265 (1977); *Washington v. Davis*, 426 U.S. 229, 239 (1976)).

There is no doubt that the plaintiffs have a right to be free from racial discrimination, and this right was clearly established at the time of the alleged discrimination.  *See Burton v. Ark. Sec'y of State*, 737 F.3d 1219, 1229 (8th Cir. 2013).  "The constitutional right to be free from [racial] discrimination is so well established and so essential to the preservation of our

19

constitutional order that all public officials must be charged with knowledge of it." *Id.* (quoting *Wimbley v. Cashion*, 588 F.3d 959, 963 (8th Cir. 2009)).

The constitutional-violation element is a closer call.  In *Lilly*, the plaintiff was terminated from her job as an investigative supervisor for the Fort Campbell Criminal Investigation Division.  510 F. App'x at 376.  She claimed that a police officer's statements that led to her termination were "motivated by a racially discriminatory intent or purpose." *Id.*  For support, the plaintiff provided evidence of discrimination cases brought against the city at least three years prior.  *Id.*  The Sixth Circuit held that the plaintiff failed to prove that the defendants deprived her of a constitutional right, concluding that "[n]othing in [the police officer's] statement indicates that he was motivated by a racially discriminatory intent or purpose." *Id.*  The Sixth Circuit explained that the only evidence of alleged racial discrimination occurred at least three years earlier and this evidence alone could not establish a discriminatory motivation in the current instance. *Id.*

Here, the plaintiffs allege that Redus instructed Eagle to change Hampton's report and recommend that the plaintiffs be decertified from the DBE program. (D.N. 37, PageID # 139) As in *Lilly*, Redus's statements are race-neutral.  510 F. App'x at 376.  However, unlike *Lilly*, in this case, there is evidence of contemporaneous racial bias, including Hampton's affidavit and the findings of the FHWA investigation.  (D.N. 37, PageID # 156–64; D.N. 40-2)  Both suggest that the defendants were motivated by discriminatory intent or purpose.

Viewing the evidence in the light most favorable to the plaintiffs, there is sufficient evidence to cast doubt on KYTC's stated reason for seeking termination of the plaintiffs' DBE certification and create a genuine issue of material fact about why approval of the plaintiffs' request for NAICS codes was delayed.  *See Hull v. Cuyahoga Valley Joint Vocational Sch. Dist.*

*Bd. of Educ.*, 926 F.2d 505, 513 (6th Cir. 1991).  While the report recommending termination was racially neutral, the plaintiffs are not required to "bring in an admission from the lips of [their] defendant." *Crutcher*, 883 F.2d at 504.  Rather, Hampton's affidavit and the findings of the FHWA report, combined with the plaintiffs' experience facing possible decertification during the NAICS certification process, provide sufficient inferential and circumstantial proof that would "allow a jury to return a jury verdict for [the plaintiffs] under appropriate instructions." *Id*.  Therefore, the defendants are not entitled to qualified immunity for federal claims made against them in their individual capacities.  *See id*.

### D.  State-Law Claims

The plaintiffs claim that the defendants "negligently failed to perform ministerial functions" when state employees failed to pass Hampton's recommendation regarding Mathis & Sons on to the committee while Hampton was on sick leave.  (D.N. 1, PageID # 10)  The plaintiffs assert that because of this alleged negligence, they did not receive a contract for the Bridge Project and incurred financial harm.  (*Id*.)  Alternatively, the plaintiffs allege that the "[d]efendants' action[s], even if not ministerial, were taken in bad faith," and thus the defendants are still liable to the plaintiffs.  (*Id*.)

KYTC asserts that it is entitled to governmental immunity on these claims.  (D.N. 34-1, PageID # 124)  The individual defendants contend that they are entitled to "qualified 'good faith' immunity."  (*Id*.)  Additionally, the defendants argue that "the tort of 'bad faith'" has only been recognized "in the context of insurance contracts" and must be dismissed. (*Id*.)

#### 1.  Governmental Immunity

A state agency is entitled to governmental immunity if it is performing a governmental function and is "supported by money from the state treasury."  *Autry v. W. Ky. Univ.*, 219

S.W.3d 713, 717 (Ky. 2007).   As a state government agency overseeing the construction and maintenance of the state's roads and bridges, there is no doubt that KYTC was performing a governmental function funded by the state treasury and thus is entitled to governmental immunity on the plaintiffs' state-law claims.   *See J.B.F. v. Ky. Dep't of Educ.*, No. 5:15-CV-33-REW, 2016 WL 3167546, at *8 (E.D. Ky. June 3, 2016); *In re Foss Mar. Co.*, No. 5:12-CV-00121, 2013 WL 4096296, at *7 (W.D. Ky. Aug. 13, 2013); *In re Shelbyville Rd. Shoppes, LLC*, 486 B.R. 848, 850–51 (Bankr. W.D. Ky. 2013).   Therefore, KYTC is entitled to governmental immunity on the plaintiffs' state-law claims.

### 2.   Official Immunity

"If a state agency is deemed to have governmental immunity, its officers or employees have official immunity when they are sued in their official or representative capacity."   *Autry*, 219 S.W.3d at 717.   Because KYTC has governmental immunity, Shella Eagle, Tyra Redus, and Melvin Bynes are entitled to official immunity for state-law claims made against them in their official capacities.   *Id*.

### 3.   Qualified Official Immunity

"[W]hen [state] officers or employees are sued for negligent acts in their individual capacities," they may be entitled to qualified official immunity.   *Id*.   Such immunity applies if the employees' actions are discretionary "and are made in good faith and within the scope of their authority or employment."   *Id*.   "However, even if an act is discretionary, there is no immunity if it violates constitutional, statutory, or other clearly established rights, or if it is done willfully or maliciously with intent to harm, or if it is committed with a corrupt motive or in bad faith."   *Id*.   If, on the other hand, the act is ministerial, and not discretionary, the employee is not

entitled to immunity.  *Id*.  "An act is ministerial if the duty is absolute, certain, and imperative, involving mere execution of a specific act based on fixed and designated facts."  *Id*.

The plaintiffs argue that the defendants are not entitled to qualified official immunity because their acts were ministerial.  (D.N. 37, PageID # 150–52)  According to the plaintiffs, the defendants simply had to forward Hampton's recommendation to the committee but failed to do so.  (*Id*.)  Alternatively, the plaintiffs argue that, even if the defendants' actions are not ministerial, the defendants acted in bad faith by discriminating against them on the basis of their race.  (*Id*., PageID # 152–53)

Regardless of whether the defendants' acts were discretionary, they are not entitled to qualified official immunity.  Assuming their actions were discretionary, for the reasons explained above, there is a genuine issue of material fact regarding whether the defendants violated the plaintiffs' clearly established right to be free from racial discrimination.  *See Burton*, 737 F.3d at 1229.  Alternatively, if the acts were ministerial, the defendants are not entitled to qualified immunity under state law.  *See Marson v. Thomason*, 438 S.W.3d 292, 296 (Ky. 2014).  Therefore, the Court will deny the defendants' motion for summary judgment with respect to the plaintiffs' state-law claims against Eagle, Redus, and Bynes made in their individual capacities.

### 4.  Bad Faith

In Count Four of the complaint, the plaintiffs allege that "Defendants' actions, even if not ministerial[,] were taken in bad faith" and thus the defendants are liable to Mathis for lost business opportunities and other economic harm.  (D.N. 1, PageID # 10)  The defendants interpret this count to assert a bad faith tort claim and argue that "Kentucky courts have recognized the tort of 'bad faith' only in the context of insurance contracts."  (D.N. 34, PageID # 124)  However, the plaintiffs' response brief addresses bad faith exclusively in the context of

qualified official immunity.  (D.N. 37, PageID # 152–53)  As discussed earlier, a defendant is not entitled to qualified official immunity if he or she acted in bad faith, which "can be predicated on a violation of a constitutional, statutory, or other clearly established right." *Lamar v. Beymer*, No. 5:02-CV-289R, 2005 WL 2464178, at *12 (W.D. Ky. Oct. 4, 2005) (quoting *Smith v. Nesbitt,* 2003 WL 22462413, at *3-4 (Ky.App.2003)).  The plaintiffs' argument with respect to bad faith is that their negligence claim must stand because the defendants violated their constitutional rights.  (*Id*.)  Therefore, the Court concludes that the plaintiffs have not alleged a stand-alone bad faith tort claim that requires analysis separate from Count Three, the negligence claim.[1]

## III.    CONCLUSION

For the reasons explained above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)    The defendants' motion for summary judgment (D.N. 34) is **GRANTED in part and DENIED in part**.  Plaintiffs' claims against Defendants Eagle, Redus, and Bynes in their official capacities are **DISMISSED** with prejudice.  The plaintiffs' 42 U.S.C. § 1983 claims against the Kentucky Transportation Cabinet are **DISMISSED** with prejudice.  Plaintiffs' claim of negligence against the Kentucky Transportation Cabinet is **DISMISSED** with prejudice.  Plaintiffs' claim of bad faith is **DISMISSED** with prejudice as to all defendants.

The defendants' motion for summary judgment is **DENIED** with respect to: (1) the plaintiffs' Title VI claims against the Kentucky Transportation Cabinet; (2) the plaintiffs' 42 U.S.C. § 1983 claims against Defendants Eagle, Redus, and Bynes in their individual capacities;

---

[1] Even if the plaintiffs' complaint had asserted a separate bad faith claim in Count Four, that claim would be treated as part of the plaintiffs' negligence claim (Count Three).

and (3) the plaintiffs' negligence claims against Eagle, Redus, and Bynes in their individual capacities.

(2)      Pursuant to 28 U.S.C. 636(b)(1)(A), this matter is hereby referred to U.S. Magistrate Judge Colin H. Lindsay for resolution of all litigation planning issues, entry of scheduling orders, consideration of amendments thereto, and resolution of all non-dispositive matters, including discovery issues.  Judge Lindsay is further authorized to conduct a settlement conference in this matter at any time.

July 18, 2017

**David J. Hale, Judge**
**United States District Court**

25